IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| IN RE ANNE ELIZABETH CLINK, ) | |
| Debtor, ) | |
| NANCY J. GARGULA, ) | |
| UNITED STATES TRUSTEE, ) | |
| Appellee, ) | |
| ) | |
| v. ) | Case No. 13-4122-CV-C-HFS |
| ) | |
| NOEL BISGES, ) | |
| ) | |
| Appellant. ) | |

**MEMORANDUM AND ORDER**

This is an appeal from a ruling in a proceeding brought in bankruptcy by the United States Trustee. She sought and obtained sanctions against Noel Bisges, former attorney for the debtor, Ms. Clink. The Bankruptcy Judge has also referred to the district court possible disciplinary proceedings against Mr. Bisges for misconduct "based on advising his client to mislead and lie to the Court." In re Clink, 2013 WL 1741945 (Bkrtcy. W.D. Mo.). The ruling adverse to Mr. Bisges, required him to disgorge $1,411 in fees paid by Ms. Clink because he failed to obtain a written contract and to pay treble that amount, $4,233 as sanctions for other alleged misconduct.

The memorandum opinion on appeal is well written and thorough, and will be adopted. Detailed rewriting is unnecessary. The most serious bankruptcy finding was that Mr. Bisges had advised the debtor to conceal her recent repayment of a loan from her mother. The e-mail message to that effect was discovered during investigation of the omission of several horses from the debtor's statement of assets, allegedly by the

attorney's faulty handling of the listing of assets. Other allegations are that there was a failure to obtain the required written retainer contract and that filings of amended documents were improperly made without being signed by the debtor.

The facts regarding the nondisclosure of the horses as assets are in considerable dispute, and the issue was settled by the debtor's paying $1,000. The e-mail advice regarding the potential preference is admitted. While conceding misconduct, Mr. Bisges contends that the e-mail advice is not condemned by statute (11 U.S.C. § 526(a)(2)) because his advice was not taken and is not reflected in any filings. The debtor independently caused her mother to repay the proceeds that might have been challenged as a voidable preference,

On the assumption that the bankruptcy ruling will be reviewed by the reader of this opinion, I will move directly to the challenge to the findings of fact, which are to be accepted on appeal unless "clearly erroneous."

The record clearly supports conclusions that Mr. Bisges, as counsel for the bankrupt, Ms. Clink, (1) recommended that she conceal from the official records a substantial transaction with her mother that looked like a preference for a favored creditor; (2) at some point condoned a reported practice of minimizing the reporting of assets such as pets, including horses, some of which, as in this case, may have significant value; and (3) disregarded procedural rules such as having a written contract with a debtor and obtaining signed verification of final drafts of papers prior to filing. Contrary findings could hardly be justified. I affirm the Bankruptcy Court findings of fact as not being clearly erroneous.

The most vulnerable flaw in the Clink testimony (at the hearing and at the meeting of creditors) was what the trustee's notes refer to as her claim that she had "secured" creditors when she had none. My best reconstruction of this would be that Ms. Clink intended the "loan" from her mother to pay off liens to be an unusual temporary event, to be repaid with tax refund moneys within days. This would account for her using quotation marks in the e-mail reference to the loan, indicating she considered it an oddity of some sort. As a college-trained debtor giving much thought to her predicament, she might well have conceptualized a version of the transaction as being "secured," when the source of repayment had been identified at the beginning of the event. It was thus "secured" in planning if not in documentation.[1]

Ms. Clink's recall of the payment to her mother demonstrates an intention to comply with the law and avoid misconduct, even when contrary advice has been received, whereas cynical remarks and the recommendation by Mr. Bisges shows a censurable disregard for applicable legal rules and procedures.[2]

Credibility findings favoring Ms. Clink and ruling against Mr. Bisges are not reversible error, particularly considering the contents of the Bisges testimony on direct and cross examination. While some aspects of the Clink testimony might be questioned

---

[1] The missing recording of the creditors' meeting, destroyed by third parties routinely despite the pendency of this proceeding, is probably not sanctionable against the Trustee, in my judgment, and certainly would not warrant dismissing this proceeding. Menz v. New Holland N. Am., Inc., 440 F.3d 1002 (8th Cir. 2006). The pertinent law is not changed by Hallmark Cards, Inc. v. Murley, 703 F.3d 456 (8th Cir. 2013). In any event the routine destruction of the recording was not prejudicial. There were several attentive witnesses who could reconstruct the proceeding. The debtor's testimony on that occasion apparently contains no material information or basis for impeachment, except as noted above with reference to "secured" creditors. Even if the horse concealment issue was not in any way the fault of Mr. Bisges, which I doubt, the sanctions imposed were not excessive and would surely have been used by the Bankruptcy Judge in any event.

[2] Because I may need to participate in further disciplinary proceedings against Mr. Bisges, I refrain from unnecessary judgments about how deep-seated or atypical his misconduct may be, or how far it may depart from common attitudes and practices among bankruptcy practitioners. The procedural improprieties are perhaps common irregularities - but maybe not.

as improbable, acceptance of her testimony was not clearly erroneous, given the opportunity of the Bankruptcy Judge to observe the witnesses.

The issue of statutory construction is best expressed on pp. 11-14 of the Bisges Reply Brief (Doc. 18). Before the ruling of the Bankruptcy Judge here "there are no reported decisions that involved a violation of [Title 11] §526(a)(2) when a false document was <u>not</u> filed with a bankruptcy court." Page 14, id. Mr. Bisges emphasizes the underlined reference to a <u>filed</u> false document by contending that the Bankruptcy Judge erred in reading the statute to refer to a "document THAT COULD BE filed in a case or proceeding under this title." Page 13, ibid. The Bisges version of the statute would apparently make it applicable only to <u>amending</u> a filing that had already been made. That is clearly not the thrust of the language- -it clearly contemplates advocating false language for documents to be filed.

I agree that the statute is limited to the preparation of filed documents, not idle talk about conduct that would not be disclosed in such documents. It would not apply to recommending false testimony, for example. One would need to search for other provisions applicable to that form of misconduct. But the real issue Mr. Bisges raises, but fails to argue, is whether the document, as filed, must itself contain false information. Does the statute apply to attempts that fail?

A fair and reasonable reading of the statute, given the likely legislative intent, would be that it forbids counseling or advising untrue or misleading statements, even when the document in question is thereafter filed without adopting the proposal. Neither party submits authority on this point. I believe it to be novel, in applying the statute adopted some eight years ago. Since it is directed toward improper advice or counseling,

the success of the bad counseling would seem to be a matter that at most goes to punishment. The misconduct is complete when it occurs, although a document filing is essential to the offense. I agree with the legal conclusion reached by the Bankruptcy Judge.

There is enough uncertainty as to the sound reading of the section so that the rule of liberal construction, in order to carry out the remedial purposes of the legislation, comes into play. On the other hand, I do not find the serious degree of ambiguity that would cause use of the rule of lenity in dealing with potentially punitive legislation.

Having reviewed the record and the briefs on appeal, I find no error in the conclusions of law reached by the Bankruptcy Judge, and accept the findings of fact. The decision in bankruptcy is therefore AFFIRMED.

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

August  13 , 2013

Kansas City, Missouri